**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 06-54-JBC**

**MICHAEL R. JONES,**                                                                                   **PLAINTIFF,**

**V.**                                              **MEMORANDUM OPINION AND ORDER**

**LINPAC MATERIAL HANDLING,**                                                         **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the defendant Linpac Material Handling's

motion for summary judgment (DE 28).  The court, having reviewed the record and

being otherwise sufficiently advised, will grant the motion.

**I.  Factual Background**

The court views the facts in the light most favorable to the plaintiff for

purposes of this summary judgment motion.

*A.  The Plaintiff's Employment and Injuries at Linpac*

The plaintiff, Michael Jones, was employed at Linpac Material Handling

("Linpac") from 1996 through 2004.  He was injured at work on two separate

occasions.  He reported the first incident, a slip-and-fall accident, on October 8,

2003.  He reported the second, which occurred when the plaintiff was chiseling

plastic, in April 2004.  He injured his biceps and shoulder in the first incident and

his right elbow in the second.  The plaintiff was placed on workplace restrictions

following each incident.  After the April 2004 incident, the plaintiff returned to

work in August 2004 with restrictions, including that he could not use his right

arm.

When the plaintiff returned to work in August, Linpac created a new position for him that did not require the use of his right arm.  Linpac made accommodations according to the doctor's written work restrictions but denied the plaintiff's verbal request for an additional accommodation.  The plaintiff attempted to do the new job for a couple of days but then verbally requested an additional accommodation. The superintendent, Mike Zuck, agreed to accommodate the verbal request, but the team lead, Kevin Krider, later told the plaintiff that he had to get the additional work restriction in writing from the doctor before the plaintiff could perform the new task with the additional accommodation.  DE 33, at 4.  When the plaintiff returned to the doctor to obtain the additional restriction in writing, the doctor changed the plaintiff's status to "off work" instead of designating an additional work restriction.  *Id.*  According to the plaintiff, the doctor did so because Linpac was not following the existing work restrictions.  The plaintiff did not return to work at Linpac at any time after that doctor's visit.

The plaintiff reached maximum medical improvement on October 7, 2004. He has permanent total body impairment of eight percent.  His remaining work restriction was that he could not lift more than twenty pounds.  The plaintiff's job as a utility floater required that he be able to repetitively lift sixty pounds.  *See* Job Description Template for Utility Floater, attached as Exhibit 1 to DE 33.  Linpac wrote to the plaintiff on December 3, 2004, to inform him that Linpac could not

2

accommodate a permanent lifting restriction of twenty pounds and that he was terminated.  The plaintiff was forty-eight years old at the time of the termination and a younger employee, Mike Sutton, replaced the plaintiff.

The plaintiff claims that Linpac hid job openings from him when he was on leave from work.  He called Laurie Powers in the Human Resources Department during October 2004 and she said they did not have any work for the plaintiff to do.  During that time period there were job openings at Linpac, including for quality control and team lead positions.

### B.  The Plaintiff's Treatment at Linpac

The plaintiff claims various incidents of sexual harassment during his employment at Linpac.  In 1998 or 1999 and then again in 2001, a co-worker, Bobby Yonts, placed signs on the plaintiff's truck and then on his back that stated "I [am] gay.  I like big, hairy men.  Call 1-800-Butt" or "I [am] gay and I [like] big hairy men and if you want a date with me, honk a horn."  *See* DE 28, at 3; Discovery Deposition on 11-08-06, attached as Exhibit 1 to DE 21.  Directly following the sign incidents, other employees made comments of a sexual nature to the plaintiff about his wife, implying that she was cheating on him.  *See* Plaintiff's January 2007 deposition, attached as Exhibit 2 to DE 29.  Yonts also commented about a woman's breasts at work in front of the plaintiff.  The plaintiff complained to the superintendent, Jeff Mitchell, about the occurrences, and there were no further incidents during the plaintiff's employment at Linpac.  *Id.*

3

Co-workers at Linpac vandalized the plaintiff's belongings.  They glued the
locks on the plaintiff's toolbox and scattered his tools on different occasions.  At
one point someone put bubble gum on the locks to his toolbox so that the plaintiff
had to cut the locks off to get to his tools.

Supervisors at Linpac were involved in the wrongful treatment of the
plaintiff.  People in management positions called the plaintiff names and swore at
him.  "In the past the Maintenance Supervisor Nick Ballinger would cuss the
operators and [the plaintiff] and he even threw a shovel and almost hit [the plaintiff]
and another operator."  Discovery Deposition on 11-08-06, attached as Exhibit 1 to
DE 21.  Following the plaintiff's injuries his team lead, Kevin Krider, said to another
co-worker that if the plaintiff could not do the job then "we need to get someone in
here that can, and get rid of the ones that can't do their jobs."  DE 33, at 7.  Krider
also said to the plaintiff on an earlier date, after the plaintiff was removed from a
team lead position, that "we are not equals anymore, cause I'm your boss now and
you're under me." *Id.*

The plaintiff complained to management and the human resources
department at Linpac regarding the incidents involving his co-workers, including the
sexual harassment by Bobby Yonts.  The plaintiff also hired a workers'
compensation lawyer at one point.  The plaintiff was treated differently by Linpac
compared with the handling of other employees.  Linpac has accommodated other
employees who had work restrictions of lifting twenty pounds or less.

4

Each of these occurrences at the plant interfered with the plaintiff's work performance and made it hard for him to go to work and do his job. Going to work negatively affected the plaintiff both mentally and physically. According to the plaintiff, he continued to do his job and tried his best not to let the treatment interfere with his work performance.

## II.  Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Legal Analysis

The plaintiff alleges that Linpac violated the Americans with Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act of 1967

5

("ADEA").  Additionally, the plaintiff brings claims against Linpac for retaliation and for hostile work environment based on sexual harassment and disability.

### A. Discrimination Under the ADA

Under the ADA, an employer may not discriminate against an individual because of that individual's disability.  42 U.S.C. § 12112(a).  To demonstrate discrimination based on a disability the plaintiff must prove that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap."  *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (quoting *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)).

Linpac argues that the plaintiff is unable to prove the elements required to proceed with a claim of disability discrimination.  Specifically, Linpac claims that the plaintiff cannot demonstrate that he was otherwise qualified to perform his job even with reasonable accommodations.  The plaintiff's work restrictions after reaching maximum medical improvement on October 7, 2004 required that he not lift more than twenty pounds, which made it impossible for him to perform his job with Linpac as a utility floater.  The job required lifting more than twenty pounds on a regular basis, namely lifting up to sixty pounds repetitiously.  *See Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998) (" The ADA does not demand that an employer exempt a disabled employee from an essential function of

6

the job as an accommodation."). Given the weight restriction, Linpac could make no accommodations that would qualify the plaintiff for the position of utility floater.

Prior to the plaintiff's reaching maximum medical improvement, Linpac attempted to provide him with a position that would accommodate his work restrictions. When the plaintiff returned to work in August 2004 Linpac created a new task specifically for the plaintiff that accommodated his work restrictions, but he was unable to perform that job. The plaintiff told his supervisor at Linpac that he could not bend over as required to perform the new task. Since the plaintiff did not have a work restriction regarding bending over, the supervisor told the plaintiff that he needed to obtain the restriction in writing from his doctor. Rather than adding new requirements to the plaintiff's work restrictions, the doctor said the plaintiff could not return to work at all. The plaintiff was unable to perform the alternative position created for him even with accommodations made in accordance with his work restrictions.

The plaintiff has not disputed that he was unable to perform his duties as utility floater at Linpac after his injuries, but instead argues that he should have been promoted to team lead after reaching his maximum medical improvement. The plaintiff contends he was qualified for the team lead position, which does not have a lifting requirement. The plaintiff was not a team lead when he was injured or at any time since his injuries. The plaintiff points out that he was previously a team lead for five-and-a-half years, but he has not held that position since

7

November 2002.  *See* Employee Status and Change Notice, attached as Exhibit 1

to DE 33.  With regard to open positions at the plant, to demonstrate disability

discrimination the plaintiff "must show that he requested, and was denied,

reassignment to a position for which he was otherwise qualified."  *Burns v. Coca-*

*Cola Enters., Inc.*, 222 F.3d 247, 258 (6th Cir. 2000).

The plaintiff claims that he was qualified for openings, including team lead

positions, that were available at the plant after October 8, 2004.  Linpac contends,

and the plaintiff does not dispute, that the plaintiff did not apply for any positions

at the plant after leaving work in August.  The plaintiff argues that he did not apply

for the positions because he was not aware of the openings.  He knew that job

openings were posted on the bulletin board inside the plant but he did not have

access to review those postings since he was not allowed in the plant while off

work.  Additionally, the plaintiff contends that Linpac's Human Resources

Department was hiding the positions from him by not giving him access to review

the board.  He spoke with Laurie Powers from the Human Resources Department

during October and she told him that Linpac did not have any open positions for

which the plaintiff was qualified.  The plaintiff contends that he should have been

automatically considered for any openings that he could have performed with his

work restrictions.

Linpac responds that job openings are posted in the newspaper and on the

internet in addition to being placed on the bulletin board in the plant.  The plaintiff

8

did not apply for any positions after his injuries or after reaching his maximum medical improvement and was never refused a position at Linpac. Whether the plaintiff was qualified to perform the job requirements of the open positions is not the issue in this discrimination claim because he did not apply for the open positions and he was a utility floater at the time of his injuries and his termination. *See Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998) ("[T]he law requires plaintiff to demonstrate that 'he is qualified to perform the essential functions of *his job* with or without reasonable accommodation.'" (citing *Stokes v. Hamilton County, Tenn.*, 113 Fed. Appx. 680, 683 (6th Cir. 2004)) (emphasis in original)).

The plaintiff has not presented facts that raise a genuine issue regarding the necessary elements of his claim for discrimination under the ADA. He has not shown that he is qualified to perform the requirements of his job as utility floater at Linpac, even with reasonable accommodations. Therefore, the court need not and will not address whether the plaintiff has established the other elements of his ADA discrimination claim.

### B. Discrimination Under the ADEA

Under the ADEA, an employer may not discriminate against an individual because of that individual's age. 29 U.S.C. § 623(a)(1). To show that an employer has discriminated based on age, a plaintiff may demonstrate: "(1) he or she was a member of the protected class; (2) he or she was discharged; (3) he or

9

she was qualified for the position; and (4) he or she was replaced by a younger person." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982)).  Linpac argues that the plaintiff was not qualified for the position of utility floater and the plaintiff has failed to raise a genuine dispute as to that fact.  Since the plaintiff has not shown that he was qualified for the position of utility floater, he has failed to demonstrate an element of his ADEA discrimination claim.

Additionally, the court finds no genuine issue of material fact regarding whether Linpac discriminated based on the plaintiff's age.  *See Ackerman*, 670 F.2d at 70 ("The ultimate issue is whether age was a factor in a decision of an employer to terminate an ADEA claimant . . . .").  The plaintiff admits that he "was terminated because Linpac determined that [it could not] accommodate Dr. Favetto's work restrictions of a 20 lbs. maximum lifting limit."  DE 33, at 9.  The plaintiff has failed to present facts demonstrating discrimination based on age, specifically that he was qualified for the position from which he was terminated or that age was a factor in his termination.

### C.  Hostile Work Environment Sexual Harassment

An employee may bring a claim against his employer for hostile work environment sexual harassment under the Kentucky Civil Rights Act.  Ky. Rev. Stat. Ann. § 344.040.  Kentucky's statute is interpreted as following the federal law with respect to a claim of sexual harassment.  *Meyers v. Chapman Printing Co.,*

10

*Inc.*, 840 S.W.2d 814, 821 (Ky. 1992) (referring to cases interpreting the federal guidelines codified in 29 CFR § 1604.11(a)).  To establish a claim for hostile work environment sexual harassment a plaintiff must show the following: "(1) [he] is a member of a protected class; (2) [he] was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with [his] work performance and creating an intimidat[ing], hostile, or offensive working environment; and (5) employer liability."  *Stacy v. Shoney's Inc.*, 955 F. Supp. 751, 754-55 (E.D. Ky. 1997) (citing *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 178 (6th Cir. 1992)).

To prove his claim the plaintiff must demonstrate that the complained-of harassment created a hostile work environment.  "For sexual harassment to be actionable, it must be *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment." *Meyers*, 840 S.W.2d at 821 (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)) (emphasis in original).  The court looks at the particular circumstances to determine whether the alleged harassment meets that standard, including the following factors: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Stacy*, 955 F. Supp. at 755 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23

11

(1993)).

Viewing the facts in the light most favorable to the plaintiff, the circumstances of harassment were not sufficiently severe or pervasive to create a hostile work environment.  The instances of sexual harassment inflicted by the plaintiff's co-workers occurred infrequently over the span of a few years and then did not occur again once the plaintiff complained to management personnel.  The severity of the harassment did not rise beyond "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" that is insufficient to create a hostile work environment.  *Stacy*, 955 F. Supp. at 755 (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) ("The concept of sexual harassment . . . is not designed to purge the workplace of vulgarity.")).  Additionally, the plaintiff did not demonstrate that the actions of his co-workers unreasonably interfered with his work performance.

The facts presented by the plaintiff do not reach the level necessary to demonstrate a hostile work environment.  *See Stacy v. Shoney's Inc.*, 955 F. Supp. 751, 755 (E.D. Ky. 1997) (citing *Blankenship v. Parke Care Centers, Inc.*, 913 F. Supp. 1045, 1051 (S.D. Ohio 1995)) ("Whether the conduct complained of rises to the level sufficient to create a hostile work environment is a legal question that a court may address on summary judgment motion.").  Therefore, the plaintiff is unable to prove the elements necessary to survive summary judgment on the claim of hostile work environment sexual harassment.

12

### D.  Hostile Work Environment Disability Harassment

The plaintiff additionally claims disability harassment under the ADA based on a hostile work environment.  The standard for demonstrating such a claim is similar to the standard for hostile work environment sexual harassment claims. *Coulson v. The Goodyear Tire & Rubber Co.*, 31 Fed. Appx. 851, 858 (6th Cir. 2002).  The court reviews the totality of the circumstances to determine whether the harassment was sufficiently severe or pervasive to create a hostile work environment.  *Denczak v. Ford Motor Co.*, 407 F. Supp. 2d 880, 891 (N.D. Ohio 2005).

In addition to the incidences of harassment related to the sexual harassment claim, the plaintiff alleges poor treatment by his team lead upon returning to work after his injuries.  This poor treatment consisted of the statements made by Kevin Krider regarding getting rid of those who could not do their job and his refusal to grant the plaintiff's verbal requests for an additional accommodation.  The plaintiff also claims that he was treated differently from other employees who had work restrictions.  Based on all the facts presented by the plaintiff, the incidences suffered were not severe or pervasive and did not create a hostile environment at work under the applicable standard.  Therefore, the plaintiff has failed to raise a genuine issue of material fact for his claim of hostile work environment disability harassment.

### E.  Retaliation

The plaintiff alleges that he was terminated from his job at Linpac, and was not given another position at the plant, in retaliation for his actions while an employee.  Under Title VII of the Civil Rights Act of 1964, an employer may not retaliate against an employee for opposing any practice that is forbidden by the Act, including employment discrimination based on sex.  42 U.S.C. § 2000e-3(a). To establish a claim of retaliation the plaintiff must prove four elements: "(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (citations and emphasis omitted).

With regard to the retaliatory harassment prong in element three, the court has already determined that the harassment the plaintiff was subjected to was not sufficiently severe or pervasive.  The alternative ground in element three for claiming retaliation is an adverse employment action taken against the plaintiff. The plaintiff alleges that he was terminated and not given the team lead position in retaliation for his prior protected activities.  Linpac argues that there is no causal connection, as required in element four, between the protected activities of the plaintiff and the actions or inactions of Linpac.  The plaintiff claims his protected

14

activities were reporting the incidences of sexual harassment and hiring a workers'
compensation attorney.  Regarding Linpac's failure to give the team lead job to the
plaintiff, it is undisputed that the plaintiff did not apply for the position.  With
respect to the termination, Linpac terminated the plaintiff's employment based on
his inability to perform the requirements of his job as utility floater.  The plaintiff
has failed to raise a genuine dispute regarding the defendant's reason for
terminating his employment.  For these reasons, the plaintiff has not raised a
genuine issue of material fact regarding his retaliation claim.

**IV.  Conclusion**

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (DE 28)
is **GRANTED**.

Signed on July 16, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

15